IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:12-CV-439-D

| | |
|---|---|
| KENNETH F. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Kenneth F. Smith ("plaintiff") challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 24, 29). Both parties filed memoranda in support of their respective motions (D.E. 25, 30). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.E. 31). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416

## I. BACKGROUND

### A. Case History

Plaintiff filed applications for DIB and SSI on 3 August 2010, alleging a disability onset date of 8 April 2010. Transcript of Proceedings ("Tr.") 15. The applications were denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 15. On 22 December 2011, a video hearing was held before an Administrative Law Judge ("ALJ"). Tr. 29-68. In a written decision dated 30 December 2011, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI. Tr. 15-24. Plaintiff timely requested review by the Appeals Council. Tr. 6-11. On 17 May 2012, the Appeals Council admitted additional evidence (Tr. 393-96), but denied the request for review (Tr. 1-5). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review on 17 July 2012, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 5); Compl. (D.E. 6)).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. §

1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

C.  **Findings of the ALJ**

Plaintiff was 45 years old on the alleged onset date of disability and 46 years old on the date of the administrative hearing. *See* Tr. 22 ¶ 7. He has a high school education (Tr. 22 ¶ 8) and past relevant work as a self-employed truck driver (Tr. 36, 38, 42).

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. Tr. 17 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: degenerative disc disease of the lumbar spine with radiculopathy, right shoulder impingement, acromioclavicular ("AC") joint arthritis, diabetes mellitus, and obesity. Tr. 17 ¶ 3. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 18 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of sedentary work. Tr. 19 ¶ 5; *see* 20 C.F.R. §§ 404.1567(a) (definition of sedentary work), 416.967(a) (same); *see also* Dictionary of Occupational Titles (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "S–Sedentary Work," http://www.oalj.dol.gov/libdot.htm (last visited 16 Aug. 2013).[2]  The limitations the ALJ included in the RFC are as follows:

---

[2] "Sedentary work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

plaintiff requires a sit or stand option, by which he is allowed to stand at his workstation and stretch for one to two minutes every hour; he cannot sit, stand, or walk more than six hours out of an eight-hour workday; he can perform only occasional climbing of ramps, stairs, ladders, ropes, or scaffolds; he can only occasionally balance, stoop, kneel, crouch, or crawl; he can never work around unprotected heights; and he must avoid concentrated exposure to hazards such as moving mechanical parts and machinery. Tr. 19 ¶ 5.

Based on this RFC, the ALJ found at step four that plaintiff was unable to perform any past relevant work. Tr. 22 ¶ 6. At step five, the ALJ relied on the testimony of a vocational expert and found that there were jobs that exist in significant numbers in the national economy that plaintiff could perform, including the occupations of call out operator, food checker, and parking attendant. Tr. 23 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 24 ¶ 11.

## II.   DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at

401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401. When, as here, the Appeals Council accepts into the record evidence relating to the alleged period of disability not presented to the ALJ, the court "must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." *Wilkins v. Sec., Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc).

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Plaintiff's Contentions

Plaintiff challenges the ALJ's decision on two principal grounds: first, the case should be remanded for consideration of the additional evidence submitted to the Appeals Council and,

second, the ALJ erred in his evaluation of plaintiff's credibility. The court will address each ground in turn.

C.  **Additional Evidence Submitted to Appeals Council**

The additional evidence plaintiff submitted to the Appeals Council consists, in part, of a one-page medical source statement form (Tr. 393) on plaintiff's RFC completed by neurosurgeon Carol M. Wadon, M.D. and dated 7 February 2012. Dr. Wadon began treating plaintiff in May 2011 for his back condition; performed a surgical procedure on his back, including a laminotomy,[3] in July 2011; and saw him for post-surgical visits on 23 August 2011 and 11 January 2012. *See* Tr. 20-21 ¶ 5; 332-33; 372-92. In the medical source statement form, Dr. Wadon either checked the appropriate space or circled the appropriate term to indicate that: plaintiff has neuro-anatomic distribution of pain and chronic nonradicular pain and weakness; his pain is moderate; he can stand or sit for 60 minutes at one time; he can lift 5 pounds on an occasional basis and no weight on a frequent basis; and he can bend occasionally, but never stoop. With respect to the number of hours plaintiff can work per day, Dr. Wadon wrote in "unknown." Tr. 393. The medical source statement form was accompanied by an encounter form (Tr. 394-95) and progress note (Tr. 396) on plaintiff's visit to Dr. Wadon.[4]

---

[3] *See* MedlinePlus website, "Diskectomy/Description" (U.S. Nat'l Med. Library & Nat'l Inst. of Health) http://www.nlm.nih.gov/medlineplus/backpain html (last visited 16 Aug. 2013).

[4] The encounter form and progress note state collectively that plaintiff reported pain in his back, down his left leg, in his hip, over his incisions, and in his joints, and muscle weakness, numbness, and tingling. Tr. 394, 396. The physical examination showed plaintiff to be "very much overweight," and to have tenderness over his left trochanteric bursa (a part of the hip, *see* OrthoInfo website, "Hip Bursitis" (Am. Acad. of Ortho. Surgeons) http://orthoinfo.aaos.org/topic.cfm?topic=A00409 (last visited 16 Aug. 2013)), but no dermatomal (*i.e.*, spinal nerve- based) sensory loss (*see* MedlinePlus website, "Adult Dermatome," http://www.nlm.nih.gov/medlineplus/ency/imagepages/18069.htm) (last visited 16 Aug. 2013)) or motion weakness. Tr. 396. Dr. Wadon diagnosed plaintiff with lumbago (*i.e.*, backache, *see* MedlinePlus website, "Back Pain," http://www.nlm.nih.gov/medlineplus/backpain html (last visited 16 Aug. 2013)) and referred him to another physician for pain management, indicating that plaintiff's condition did not call for further surgery and that she could not continue to prescribe him narcotic pain medication. Tr. 395-96.

Plaintiff contends that the case must be remanded to enable the Commissioner to further consider the opinions expressed by Dr. Wadon in the medical source statement form. The court finds that no remand is required.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g, Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *l-2. It has been held, more specifically, that "[a] court must remand the matter to the Commissioner if a claimant submits additional evidence that is 'new' (*i.e.*, not cumulative or duplicative) and 'material' (*i.e.*, a reasonable possibility exists that the evidence would have produced a different result)." *Hester v. Astrue*, No. 7:07–CV–125–D, 2008 WL 7663940, at *9 (E.D.N.C. 11 Aug. 2008) (citing *Wilkins*, 953 F.2d at 94–96), *aff'd*, 326 Fed. Appx. 186 (4th Cir. 2009).

The additional evidenced is not material, in part, because it relates to a period after the date of the ALJ's decision. *See, e.g.*, *Napier v. Astrue*, No. 5:11–CV–390–D, 2012 WL 4321354, at *5 (E.D.N.C. 15 Aug. 2012) (mag. judge's mem. & recommendation), *adopted*, 2012 WL 4321335 (20 Sept. 2012). Dr. Wadon issued her opinions, on 7 February 2012, over a month after the ALJ issued his decision, on 30 December 2011. Moreover, it followed by almost a month the post-surgical visit on 11 January 2012, which was also after the ALJ's decision. The medical source statement form does not state that it relates to the period up to the ALJ's decision

or otherwise specify the period to which it relates. Thus, plaintiff has not demonstrated that Dr. Wadon's opinions relate to any period other than the time at which she issued them.

The court recognizes that the period between issuance of Dr. Wadon's opinions and the ALJ's decision—just over a month or 39 days—is relatively modest in length and that plaintiff's back problems are longstanding. Nonetheless, plaintiff has not shown that plaintiff's condition when Dr. Wadon issued her opinions can reasonably be deemed to be the same when the ALJ issued his decision.

Moreover, Dr. Wadon's opinions are in most respects consistent with the ALJ's RFC determination. For example, Dr. Wadon's findings regarding plaintiff's pain are reflected in the ALJ's RFC determination. Most basically, the ALJ limited plaintiff to sedentary work. But he also included numerous additional limitations based expressly on plaintiff's pain:

> [D]ue to his recurrent back pain, he requires the option to sit or stand during the day, and he is limited in the total amount of hours he may sit, stand, and walk. Due to his recurrent shoulder pain, he can perform only occasional climbing of ladders, ropes, and scaffolds. Moreover, due to his recurrent back pain, which radiates into his legs, he is also limited to only occasional performance of the additional postural activities [*i.e.*, balancing, stooping, kneeling, crouching, or crawling].

Tr. 21 ¶ 5. The extensive evidence of plaintiff's pain in the record, which the ALJ discusses comprehensively in his decision, provides ample support for these determinations by the ALJ. *See* Tr. 19-22 ¶ 5.

Dr. Wadon's opinion that plaintiff can stand or sit for 60 minutes at a time is, of course, addressed by the sit-stand option in the RFC by "which he is allowed to stand at his workstation and stretch for one to two minutes every hour." Tr. 19 ¶ 5. Substantial evidence of record supports the ALJ's inclusion of this option in plaintiff's RFC. *See* Tr. 19-22 ¶ 5.

There are two areas of difference between Dr. Wadon's opinions and the ALJ's RFC determination—lifting and stooping (*i.e.*, bending at the waist (*see* Tr. 75)). Whereas the ALJ, by placing plaintiff at the sedentary exertional level (Tr. 19 ¶ 5), found plaintiff capable of lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," 20 C.F.R. §§ 404.1567(a), 416.967(a), Dr. Wadon found plaintiff capable of lifting only 5 pounds occasionally and no weight frequently (Tr. 393). Substantial evidence supports the ALJ's lifting determination.

Such evidence includes the 29 January 2011 opinion of the nonexamining state agency consulting physician that plaintiff could perform work at the light exertional level, which involves lifting up to 20 pounds at a time and 10 pounds frequently. Tr. 74, 77, 82-83, 84, 85; *see* 20 C.F.R. §§ 404.1567(b) (definition of light work), 416.967(b) (same). The ALJ accorded "great weight to [this] physician's physical assessments, as her findings were consistent with the objective medical evidence, and were consistent with the claimant's testimony regarding his limitations and activities," although he noted that "the more recent evidence reflects that the claimant is more limited." Tr. 22 ¶ 5.

Moreover, in making his determination on lifting, the ALJ had before him the post-surgery discharge instructions by Dr. Wadon, dated 21 July 2011, providing that plaintiff engage in "no lifting, pushing, pulling over 5 pounds" and that "[a]ll restrictions [remain] until cleared at 4-week postoperative appointment." Tr. 333. The notes from this appointment, on 23 August 2011, the one post-operative visit in the record before the ALJ, made no reference to the restrictions being cleared, suggesting that they remained in place. Tr. 372-23. The ALJ discussed both the discharge records and 23 August 2011 office visit notes in his decision. Tr.

20 ¶ 5; 21 ¶ 5. Thus, in making his lifting determination, the ALJ already had before him and considered evidence indicating that Dr. Wadon believed plaintiff could lift up to only 5 pounds.

Further, in her medical source statement, Dr. Wadon does not explain or cite supporting evidence for her opinion that plaintiff can lift only 5 pounds occasionally and no weight frequently. The records of the 27 January 2012 visit submitted with the medical source statement also offer no explanation, making no reference at all to lifting. Dr. Wadon's other records also do not discuss plaintiff's capacity for lifting. Nor does there appear to be any other medical evidence finding plaintiff as limited with respect to lifting as Dr. Wadon. The lack of support for Dr. Wadon's opinion provided in her medical source statement, her own records, and the other medical records diminishes the weight to which her opinion is entitled. *See* 20 C.F.R. §§ 404.1527(d)(3), (4), 416.927(d)(3), (4).

As to stooping, while the ALJ found that plaintiff could stoop occasionally (Tr. 19 ¶ 5), Dr. Wadon found that he could never stoop (Tr. 393). Again, substantial evidence supports the ALJ's determination. As with the lifting determination, such evidence includes the assessment of the nonexamining state agency consulting physician that plaintiff could stoop occasionally. Tr. 75, 83. In addition, Dr. Wadon's view toward stooping was already before and considered by the ALJ because the post-surgery discharge instructions for plaintiff directed that he engage in "[n]o forward bending," which appears to be the equivalent of stooping. Tr. 333. As with her opinion on lifting, Dr. Wadon's opinion on stooping is not explained in her medical source statement or her other records, and there appears to be no other medical evidence placing such a limit on plaintiff.

Dr. Wadon's notation that the number of hours plaintiff can work per day is "unknown" is tantamount to a statement that she has no opinion on that issue. Tr. 393. That position

Case 5:12-cv-00439-D   Document 32   Filed 08/16/13   Page 11 of 16

certainly does not contradict the ALJ's determination that plaintiff has the capacity to work up to eight hours per workday. *See* Tr. 19 ¶ 5.

The court concludes that the ALJ's RFC is supported by substantial evidence based on the record as supplemented by the additional evidence from Dr. Wadon. There does not exist a reasonable possibility that the additional evidence would have produced a different result. The court accordingly rejects plaintiff's contention that remand is required for further consideration of that evidence.

### D. ALJ's Credibility Analysis

Plaintiff contends that the ALJ did not properly evaluate the credibility of his allegations of limitations arising from his impairments, which he, of course, contends are disabling. The ALJ found the allegations not to be fully credible. Tr. 19-20 ¶ 5; 22 ¶ 5. The court finds that the ALJ committed no error.

The ALJ's assessment of a claimant's credibility involves a two-step process. *Craig v. Chater*, 76 F.3d 585, 593-96 (4th Cir. 1996); 20 C.F.R. §§ 404.1529(a)-(c), 416.929(a)-(c); Soc. Sec. Ruling 96–7p, 1996 WL 374186, at *1 n.1; 2 (2 July 1996). First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. Soc. Sec. Ruling 96–7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms), 416.929(c)(3) (same). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. Ruling

96–7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cvl742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp.2d 898, 906 (D.S.C. 2006).

In assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 19 ¶ 5. At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not fully credible. Tr. 19-20 ¶ 5. He stated that "the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 19-20 ¶ 5. He also stated that "[i]n summary, after carefully considering the entire record, including the claimant's testimony, the undersigned concludes that the claimant's subjective complaints are not as severe or limiting as alleged and would not preclude him from performing work at the residual functional capacity noted above on a regular and sustained basis." Tr. 22 ¶ 5.

The ALJ provided specific reasons for his credibility determination. Tr. 21-22 ¶ 5. He stated in relevant part:

> The undersigned finds that, despite the claimant's pain, he has reported no more than mild limitations in his activities of daily living. He testified that he lived with his wife and 11-year-old son, and stated his wife worked. This shows that he is able to care for himself independently while his wife is away. Furthermore, he stated he was unable to drive commercially because he could no longer push a clutch; however, the evidence does not show that he is unable to drive a manual transmission vehicle. In addition, the medical records reflect the claimant's symptoms have improved after aggressive treatment, and that he walks well with a walker or cane. The residual functional capacity noted herein accommodates the use of a cane. Overall, the evidence suggests the claimant's pain is not so severe to preclude him from working, and that he is capable of competitive work activity.

Tr. 21-22 ¶ 5. These reasons are well grounded in the evidence, as the ALJ's detailed and extended discussion of the evidence illustrates. *See* Tr. 18-19 ¶ 4; 19-22 ¶ 5.

Plaintiff argues that the ALJ erred in his statement that "[t]he [RFC] noted herein accommodates the use of a cane" since the RFC does not expressly provide for use of a cane. The RFC does, though, accommodate use of a cane by providing for sedentary work. As one court in the Fourth Circuit has noted, "[g]iven the RFC for sedentary work, any error in omitting the need for a hand-held assistive device is harmless, because by definition, little standing or walking is required to perform sedentary jobs." *Catterton v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-11-1056, 2013 WL 2470082, at *2 (D. Md. 6 June 2013) (citing *Boyd v. Astrue*, 2011 WL 3652299, at *2 (D.S.C. 17 Aug. 2011) ("Even assuming that Plaintiff does require a cane, there is no indication that use of a cane would prevent Plaintiff from performing the minimal standing, walking and carrying requirements of sedentary work.")).

Plaintiff also contends that the ALJ failed to discuss the testimony by plaintiff supporting his inability to work. There is, of course, no requirement that an ALJ summarize a claimant's testimony in his decision. Indeed, more generally, "'[a]n ALJ is not required to make specific comment concerning all of the evidentiary matter before him . . . .'" *Di Gregorio v. Astrue*, No. 10–3509(MLC), 2011 WL 3625134, at *6 (D.N.J. 12 Aug. 2011) (quoting *Grohoske v. Apfel*, 17 Fed. Appx. 893, 895 (10th Cir. 2001)); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989); *accord Best v. Astrue*, No. 5:06–CV–301–D, 2008 WL 64687, at *3 (E.D.N.C. 3 Jan. 2008).

Nevertheless, the ALJ did discuss testimony by plaintiff that supports his inability to work. The ALJ stated:

> The claimant alleges he is unable to work due to constant pain in his back that radiates into his leg. He testified that his pain also caused shakiness. Moreover,

> the claimant stated that he experienced constant pain in his shoulder, as well as severe symptoms from diabetes such as mood changes, and recurrent headaches. Due to his combined impairments, the claimant alleges difficulty with standing, sitting, squatting, and bending.

Tr. 19 ¶ 5.

Although plaintiff contends that the ALJ did not discuss his testimony to the effect that he could sit and stand for only minutes at a time (*see* Tr. 56-58), the ALJ expressly noted, as quoted above, that "the claimant alleges difficulty with standing [and] . . . sitting." Tr. 19 ¶ 5. Moreover, the ALJ's RFC determination reflects this and other limitations about which plaintiff complained, including plaintiff's limited ability to lift, about which he also testified (*see* Tr. 57-58). And, as previously noted, in reaching his RFC determination, the ALJ declined to follow the opinion of the nonexamining state agency consulting physician that plaintiff could perform work at the light exertional level. Tr. 22 ¶ 5; 74, 78, 82-83, 84, 85; *see* 20 C.F.R. §§ 404.1567(b), 416.967(b).

The court concludes that the ALJ's determination of plaintiff's credibility is supported by substantial evidence and conforms to the applicable legal standards. Plaintiff's challenge to it is therefore meritless.

### III. CONCLUSION

After careful consideration of the ALJ's decision and the record in this case, as supplemented by the Appeals Council, the court concludes that the decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 29) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 24) for judgment be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 27 August 2013 in which to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 10 calendar days after service of the objections on the responding party or 6 September 2013, whichever is earlier.

This, the 16th day of August 2013.

James E. Gates
United States Magistrate Judge